STATE ex rel. ASHBY ROAD
PARTNERS, LLC, et al.,
Appellants,

v.

STATE TAX COMMISSION of
Missouri, Respondent,

Philip Muehlheausler, Assessor of St.
Louis County, Respondent.

No. SC 89529.

Supreme Court of Missouri,
En Banc.

Aug. 4, 2009.

Byron E. Francis, Cynthia A. Petracek, Armstrong Teasdale LLP, St. Louis, for appellants.

Chris Koster, Attorney General, Mark E. Long, Assistant Attorney General, Paula J. Lemerman, Associate County Counselor, Patricia Redington, County Counselor, for respondents.

PATRICIA BRECKENRIDGE, Judge.

Commercial property owners[1] appeal the Cole County circuit court's judgment denying their petition for a writ of prohibition. Property owners had asked the circuit court to issue a writ prohibiting the State Tax Commission of Missouri from requiring property owners to prove their

1. These owners are Ashby Road Partners, LLC; Kenneth R. Baldridge; Baldridge Development Group, LLC; Manchester Ballas Associates; Baldridge Keeven Properties; John H. Berra Sr. Family Limited Partnership; Beco Concrete Products, Inc.; Breihan Construction Co.; Breihan Swanson Inc.; Breihan Construction Co., Inc; Marlborough Development LLC; The Breihan Development Co.; Terry Steele Dunaway; Jefferson County Bancshares, Inc.; Willoughby, Inc.; 8301 Watson, Inc.; Yorkshire Village Inc.; John R. McLain Jr.; Judith L. McClain; McLain Partners, III; McLain Partners; Brown & Sons Foodliner, Inc.; Novus Investments, LLC; Terra Holding Co. Inc.; JHB Properties, Inc.; Yalcin Enver; Cornerstone Industrial Fund I, LLC; and Cornerstone West Park LLC.

properties' market values in proceedings on their complaints that the St. Louis County assessor assigned discriminatory assessments to their properties. This Court affirms the circuit court's judgment.

### Factual and Procedural Background

■ Property owners assert that Philip Muehlheausler, assessor for St. Louis County, discriminated against them by assessing their properties at a higher percentage of true value [2] in comparison with other similar commercial properties in the same taxing area. Each appellant alleges that its own property was assessed accurately at precisely 32 percent of its true market value, while other similarly situated properties were assessed at a lower percentage of true market value. After failing to obtain relief from the St. Louis County board of equalization, property owners filed individual complaints for review of assessment with the commission, which were consolidated. The hearing officer assigned to their cases issued an order requiring property owners to designate a lead case for each group for the purpose of determining market value and the assessment ratio.

Property owners filed an objection to this order, arguing it was unnecessary to require property owners to prove their properties' market values. Property owners argued that they do not dispute the assessor's determination of market value and that their only objection was to their properties' assessed values in relation to the assessment of other properties, which they argued had been undervalued systematically.[3] Property owners contended that the assessor impermissibly would attempt to use their market value evidence to advocate a higher value for their properties. They asserted that section 138.060 [4] prohibits an assessor, in a hearing or trial of an appeal of a valuation assessment, from advocating for a higher valuation than the value originally set for that assessment period.

The hearing officer overruled their objections to the order, and the commission affirmed the hearing officer's order. The commission held that, to prove their discrimination claims, property owners were required to prove the true market values of their properties to determine the actual levels at which the properties had been assessed. The commission stated that property owners could show true market value through several methods, but that, regardless of the method, the true market value of property owners' properties is relevant and necessary to property owners' discrimination claims and must be proven.

Property owners then petitioned the circuit court for a writ of prohibition, alleging the commission acted in excess of its authority because it imposed a burden of producing evidence that not only was prohibited by section 138.060 but also was irrelevant in light of property owners not contesting their properties' assessed val-

---

2. "True value in money is the price [that] the property would bring from a willing buyer when offered for sale by a willing seller. Thus, the true value is the fair market value of the property on the valuation date." *Mo. Baptist Children's Home v. State Tax Comm'n*, 867 S.W.2d 510, 512 (Mo. banc 1993). When referring to property owners' argument, this Court will use the term "market value" when that is the term property owners have used. The applicable statutes refer either to proper-

ties' "true value" or "true market value," but for simplicity, this Court will use the term "true market value."

3. The assessed value is determined by multiplying a real property's true value "by the appropriate statutory assessed value percentage." 12 CSR 30–3.001(2)(B).

4. All statutory references are to RSMo 2000 unless otherwise noted.

ues. The circuit court issued a summons to the commission, and the commission filed a response to the petition as well as suggestions in opposition. The circuit court denied property owners' request for a preliminary writ of prohibition but set the case for hearing. The circuit court heard the matter and subsequently denied property owners' petition on the merits. After the court of appeals dismissed their appeal from that denial, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Standard of Review

■■■ "Prohibition is an original remedial writ brought to confine a lower court to the proper exercise of its jurisdiction." *State ex rel. White Family P'ship v. Roldan,* 271 S.W.3d 569, 572 (Mo. banc 2008). A writ of prohibition will issue to prevent "an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent an abuse of extra-jurisdictional power." *State ex rel. Kinder v. McShane,* 87 S.W.3d 256, 260 (Mo. banc 2002). A writ of prohibition is discretionary, however, and "'there is no right to have the writ issued.'" *State ex rel. Wyeth v. Grady,* 262 S.W.3d 216, 219 (Mo. banc 2008) (quoting *State ex rel. Linthicum v. Calvin,* 57 S.W.3d 855, 857 (Mo. banc 2001)).

## Proceedings in Prohibition

■■■ The normal proceedings in prohibition established in Rule 97 are as follows: First, a relator initiates a proceeding by filing a petition for a writ of prohibition in the appropriate court. Rule 97.03. Next, the court considers the petition and determines if a preliminary order in prohibition should issue. Rule 97.04. If the court does not grant a preliminary order, the petitioning party then must file its writ petition in the next higher court. *Atteberry v. Mo. Bd. of Prob. & Parole,* 193 S.W.3d 444, 445 (Mo.App.2006). If the

court, however, "is of the opinion that the preliminary order in prohibition should be granted, such order shall be issued." Rule 97.04. The preliminary order directs the respondent to file an answer within a specified amount of time, and it also may order the respondent to refrain from all or some action. Rule 97.05. If the court issues a preliminary order and a permanent writ later is denied, the proper remedy is an appeal. *State ex rel. Am. Eagle Waste Indus. v. St. Louis County,* 272 S.W.3d 336, 339 (Mo.App.2008).

The proceedings in this case differed from those anticipated by Rule 97. Here, property owners filed a petition for a writ of prohibition. The circuit court denied the request for a preliminary order and, instead, issued a summons. The commission argues that because no preliminary order was issued, property owners' only recourse is to file a writ petition in the next higher court.

This case differs from the cases on which the commission relied, which held that, on the denial of a preliminary order, the petitioning party must file its writ petition in the next higher court. *See, e.g., State ex rel. Office of Pub. Counsel v. Mo. Pub. Serv. Comm'n,* 741 S.W.2d 114, 115 (Mo.App.1987). Here, despite the fact that the circuit court denied the request for a preliminary order, the court issued a summons and the commission filed a response to the petition. The circuit court then held a hearing, adjudicated the merits of property owners' writ petition, and decided that property owners were not entitled to a permanent writ of prohibition. The issue, then, is whether the circuit court's issuance of a summons, rather than a preliminary order, precludes an appeal.

The purpose of a preliminary order is two-fold. First, a preliminary order notifies a respondent that a petition has been filed and directs the respondent to file an

answer to the petition within a set amount of time. Rule 97.05. Second, it allows the court, in its discretion, to restrict a respondent from engaging in certain activities. Rule 97.05. The function of a summons, such as the one issued in this case, accomplishes the first purpose of a preliminary order. A summons notifies that a pleading has been filed, and it provides a fixed time in which a response must be filed. Rules 54.01 and 54.02. Both a preliminary order in prohibition and a summons serve to elicit the filing of a response to a petition.

■ Although the circuit court called the document it issued a summons rather than a preliminary order, the substance of the document is the equivalent to a preliminary order in prohibition. A legal document "is not judged by its title but by its substance and content." *See State v. Abeln,* 136 S.W.3d 803, 813 (Mo.App.2004) (quotation marks and citation omitted). The issuance of a summons is not authorized or anticipated by Rule 97. Nevertheless, the summons issued by the circuit court, in substance, met the purpose of a preliminary order in prohibition and triggered property owners' right to appeal. Accordingly, property owners were entitled to appeal, on the merits, the circuit court's judgment denying their petition in prohibition.[5]

## Discrimination Claim

■ Having found property owners were entitled to appeal, this Court now turns to the merits of property owners' argument. Property owners contend that their properties, while valued correctly, were discriminated against in that similar commercial properties in the same taxing area were assessed at a lower percentage of true market value. If true, such discrimination would violate the Missouri Constitution, which requires uniform taxation on the same class of real property. Mo. Const. art. X, sec. 3.

Property owners maintain they are entitled to a writ prohibiting the commission from requiring them to prove the market values of their properties as an element of their discrimination claims. They assert that they do not challenge the values established by the assessor for their properties, which include the true market values the assessor used to calculate the assessed values, so those values are proof of the market values and the assessor cannot present evidence of any other values of their properties to disprove their claims of discrimination. Property owners claim the effect of the commission's order is that they will be required to obtain expensive commercial appraisals of all of their properties to meet their burden of proving market value. Property owners argue such appraisals are "highly irrelevant" as to the issue of whether their properties were assessed at a higher percentage of true market value than other property. They contend they should be able to use the assessor's valuation of their property and only prove that other property is undervalued.

■ The assessor is charged with determining the true market value of a parcel of commercial property and then mul-

**5.** In support of their claim that the circuit court's judgment was appealable, property owners cited cases finding that a relator has the right to appeal once a respondent has filed an answer to the relator's petition in prohibition, even though a preliminary order in prohibition has not issued. *See State ex rel. Meyer v. Cobb,* 467 S.W.2d 854, 855 (Mo. 1971); *Delay v. Mo. Bd. of Prob. & Parole,* 174 S.W.3d 662, 664 (Mo.App.2005); *Wheat v. Missouri Bd. of Probation and Parole,* 932 S.W.2d 835, 838 (Mo.App.1996); *State ex rel. Schaefer v. Cleveland,* 847 S.W.2d 867, 870 (Mo.App.1992). It is not necessary to reach that issue here because the summons issued was, in effect, a preliminary order.

tiplying that true value by 32 percent, the percentage set in section 137.115.5(3), to determine the assessed valuation or value.[6] Section 137.115.1. Inherent in a discrimination action is the comparison of the assessor's determination of true market value of the property claimed to be discriminated against with that of other property in the same class. To prove discrimination by undervaluation of other property, one must show "intentional systematic undervaluation by state officials of other taxable property in the same class[.]" *See Sperry Corp. v. State Tax Comm'n*, 695 S.W.2d 464, 468 (Mo. banc 1985) (quotation and citation omitted). To do this, a taxpayer first must prove the true market value of the properties at issue, including the taxpayer's own, and then show that the taxpayer's property has been assessed at a greater percentage than the other property. *See Cupples Hesse Corp. v. State Tax Comm'n*, 329 S.W.2d 696, 699–701 (Mo.1959); *Koplar v. State Tax Comm'n*, 321 S.W.2d 686, 690, 695 (Mo.1959).

Specifically, the commission's methodology requires property owners to establish the true market values of their properties to show the percentage of true market values at which their properties are assessed. They then must establish the true market values of comparable properties to determine the percentages of true market values at which the comparable properties are assessed. The ratio of assessed value to true market value for each of property owners' properties is compared with the ratios of assessed value to true market value for the comparable properties to de-

termine whether any appellant is being assessed at a higher percentage of value.

Property owners want their acceptance of the assessor's market values for their properties to be conclusive proof that their properties were assessed accurately at precisely 32 percent of their true market values, so that each appellant is required to prove only that other similarly situated properties were assessed at a percentage of true market value lower than 32 percent.

Essential to property owners' argument is their assumption that the commission is bound by the assessor's determination of a property's true market value, but property owners cite no authority for that concept. Proof of their properties' true market values is necessary evidence for their discrimination claims because the commission is not compelled to accept the assessor's determination of true market value as the true market value of the taxpayer's property.

Property owners argue, however, that even if evidence of the market values of their properties is relevant, such evidence is inadmissible because section 138.060 precludes the assessor from advocating for or presenting evidence of higher market values of their properties. Section 138.060.1 states that, in any hearing of an appeal of an assessment from a first-class charter county or a city not within a county, "the assessor shall not advocate nor present evidence advocating a valuation higher than that value finally determined by the assessor or the value determined by the board of equalization, whichever is higher, for that assessment period."[7]

6. The statutes set out a formula for determining the tax due on commercial real estate:

| True Fair Market Value | | Assessment Percentage Rate | | Applicable Tax Percentage Rate | | Tax Due |
|---|---|---|---|---|---|---|
| True Fair Market Value | X | Assessment Percentage Rate | X | Applicable Tax Percentage Rate | = | Tax Due |

The assessment percentage rate, per section 137.115.5(3), is 32 percent.

7. Section 138.060.1 in its entirety reads:
The county board of equalization shall, in a summary way, determine all appeals from

Property owners argue that "[b]y explicitly prohibiting the assessor from advocating a higher value for [property owners'] properties, section 138.060 unambiguously limits the Assessor's ability to use valuation evidence to defend against [property owners'] claims."

In addressing the application of section 138.060, the first consideration is how that statute applies to the specific action property owners seek to prohibit. Property owners seek a writ to prohibit the commission from requiring *property owners*, not the assessor, to produce evidence of the true market value of the property in the lead cases. The prohibition in the statute is directed to the assessor. There is no prohibition in section 138.060 on the relevant evidence the commission can request. Instead, section 138.430 requires the commission to investigate all appeals of assessments, including appeals alleging discriminatory assessment, and authorizes the commission in such investigations to "inquire of the owner of the property or of any other party to the appeal regarding *any matter or issue* relevant to the valuation, subclassification or assessment of the property." Section 138.430.2 (emphasis added). As found above, the true market values of property owners' properties are relevant and necessary to their claims of discrimination, and the commission was within its authority to order property owners to provide information regarding the true market value of the property in the lead cases.

■ The next issue is whether property owners should not be required to present evidence of the market values of their properties because the assessor could use that evidence to advocate for higher market values, which property owners argue is prohibited by section 138.060. Although the commission, in its order, agreed with the hearing officer's directive that property owners present evidence of the true market value of the lead properties, the commission went further and made a general finding that it was permissible for the assessor to advocate for higher market values in hearings of discrimination claims. The hearing officer's order, which was upheld in its entirety by the commission, stated that "[n]othing contained in Section 138.060, RSMo limits an Assessor's ability to use valuation evidence to defend against a claim of disparate treatment." Inherent in that ruling is a finding by the commis-

the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly. There shall be no presumption that the assessor's valuation is correct. In any county with a charter form of government with a population greater than two hundred eighty thousand inhabitants but less than two hundred eighty-five thousand inhabitants, and in any county with a charter form of government with greater than one million inhabitants, and in any city not within a county, the assessor shall have the burden to prove that the assessor's valuation does not exceed the true market value of the subject property. In such county or city, in the event a physical inspection of the subject property is required by subsection 10 of section 137.115, RSMo, the assessor shall have the burden to establish the manner in which the physical inspection was performed and shall have the burden to prove that the physical inspection was performed in accordance with section 137.115, RSMo. In such county or city, in the event the assessor fails to provide sufficient evidence to establish that the physical inspection was performed in accordance with section 137.115, RSMo, the property owner shall prevail on the appeal as a matter of law. At any hearing before the state tax commission or a court of competent jurisdiction of an appeal of assessment from a first class charter county or a city not within a county, the assessor shall not advocate nor present evidence advocating a valuation higher than that value finally determined by the assessor or the value determined by the board of equalization, whichever is higher, for that assessment period.

sion that the assessor is not precluded by section 138.060 from advocating for or presenting evidence of a higher true market value of a taxpayer's property or even, as property owners fear, using property owners' evidence to advocate for a higher true market value when the assessor is defending a discrimination claim.

■ The commission's order could be understood as a holding that the prohibition in section 138.060 against the assessor advocating for a higher valuation is limited to hearings challenging the valuation placed on property by the assessor and is not applicable in a hearing on a discrimination claim. If that is what the commission meant, that would be an incorrect interpretation of the statute. The prohibition applies to "*any* hearing before the state tax commission or a court of competent jurisdiction of an appeal of assessment from a first class charter county or a city not within a county." Section 138.060 (emphasis added). "Where a statute's language is clear, courts must give effect to its plain meaning...." *Vance Bros., Inc. v. Obermiller Constr. Serv., Inc.*, 181 S.W.3d 562, 564 (Mo. banc 2006). The language of section 138.060 prohibits the assessor of a first-class charter county, such as St. Louis County,[8] from advocating for or presenting evidence in a hearing before the commission that advocates "a valuation higher than that value finally determined by the assessor ... for that assessment period." This prohibition applies to all hearings, including hearings on claims of discrimination, like property owners' claims, here.

It is more likely, however, that the commission's ruling was not a misunderstanding of the scope of the prohibition as it applied to a particular type of hearing but, instead, an understanding by the commission that the legislature did not intend to prohibit an assessor from presenting all valuation evidence. Section 138.060 prohibits an assessor from advocating for or presenting evidence advocating for a higher "valuation" than the "value" finally determined by the assessor. Property owners argue that this language prohibits an assessor from presenting any evidence of a higher market value, as well as a higher assessed value, because the assessor determines both market value and assessed value. Because the legislature uses the singular terms "valuation" and "value" in the statute, however, it clearly was not referring to both true market value and assessed value.[9] While the assessor establishes both true market value and assessed value, which are necessary components of a taxpayer's assessment, as noted previously, the assessed value is the figure that is multiplied against the actual tax rate to determine the amount of tax a property owner is required to pay. The assessed value is the "value that is finally determined" by the assessor for the assessment period and is the value that limits the assessor's advocacy and evidence. Section 138.060. By restricting the assessor from advocating for a higher assessed valuation than that finally determined by the assessor for the relevant assessment period, the legislature prevents an assessor from putting a taxpayer at risk of being penalized with a higher assessment for challenging

8. St. Louis County is a first-class charter county. Mo. Const. art. VI, sec. 30(a). *See also Bopp v. Spainhower*, 519 S.W.2d 281, 283–84 (Mo.1975).

9. Section 138.060 uses the terms "valuation" and "value" interchangeably. The meaning

of the statute is not determined by whether the term used is "valuation" or "value" but, instead, rests on whether these terms refer to true market value, or the assessed value or valuation, or both.

an assessor's prior determination of the value of the taxpayer's property.

 Property owners' last challenge to the commission's order is that it is unduly burdensome for them to obtain expensive commercial appraisals of all of their properties to prove the market value of their properties.[10] The burden is on the taxpayer to establish discrimination. *State ex rel. Platz v. State Tax Comm'n*, 384 S.W.2d 565, 568 (Mo.1964). In denying property owners' objection to the hearing officer's order that they produce evidence of true market value, the commission ruled that property owners could proceed on the issue of true market value "by seeking a stipulation, by requesting an admission, or by proving up the value of the subject property." Although property owners, as taxpayers, have the burden to prove discrimination, they cannot be compelled to present evidence in any particular form.

Property owners can choose to present the assessor's values of the properties as their only evidence of the properties' true market values. The consequence of their choice, as the party with the burden of proof, is that their chosen evidence must persuade the commission that the assessor discriminated against them by assessing their properties at a higher percentage of value in comparison with other similar properties in the taxing area, and, if their evidence does not persuade, property owners will lose their claims.

## Conclusion

The circuit court did not err in denying property owners' petition for a writ of prohibition. Accordingly, the circuit court's judgment is affirmed.

All concur.

---

**10.** Under the hearing officer's order, however, appraisals of all properties would not be necessary to meet property owners' burden of proving true market value. The hearing officer ordered that the parties "designate a lead case in each group for the purposes of proceeding to a hearing" and that "the issue of market value will be determined in this lead case, either by hearing or by stipulation, before we proceed to the issue of discrimination." Although property owners apparently object to the designation of lead cases, that objection is not included in property owners' claim of error in this Court, as set out in their point relied on, and, therefore, is not addressed.