In the Missouri Court of Appeals
 Western District

STATE OF MISSOURI ex rel. )
MISSOURI DEPARTMENT OF HEALTH )
and SENIOR SERVICES, ) WD84247
 Appellant, )
v. )
 ) FILED: May 18, 2021
RENEE T. SLUSHER, Commissioner, )
Administrative Hearing Commission, )
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
 THE HONORABLE JOHN E. BEETEM, JUDGE

 BEFORE DIVISION FOUR: CYNTHIA L. MARTIN, CHIEF JUDGE, PRESIDING,
 LISA WHITE HARDWICK AND W. DOUGLAS THOMSON, JUDGES

 The Missouri Department of Health and Senior Services (“the Department”)

appeals the circuit’s court’s judgment quashing its preliminary writ of prohibition

and denying the Department’s petition for a permanent writ of prohibition. The

Department contends that it cannot be compelled to disclose data submitted by

medical marijuana license applicants because the Missouri Constitution requires it

to keep that information confidential. For reasons explained herein, we affirm.

 FACTUAL AND PROCEDURAL HISTORY
 In November 2018, Missourians, through initiative, enacted Article XIV of

the Missouri Constitution. Article XIV authorizes and regulates medical

marijuana. The article directs the Department to administer the state’s medical

marijuana program, including granting or denying “state licenses . . . for the

cultivation, manufacture, dispensing, sale, testing, tracking, and transportation of

marijuana for medical use as provided by law.” Art. XIV, § 1.3(1)(a). The article

provides for the Department to make available to the public license application

forms to operate medical marijuana cultivation facilities, medical marijuana

testing facilities, medical marijuana dispensary facilities, and medical marijuana-

infused products manufacturing facilities. Art. XIV, §1.3(6).1 The article allows the

Department to restrict the aggregate number of licenses granted in each category

of medical marijuana cultivation, medical marijuana-infused products

manufacturing, and medical marijuana dispensary facilities. Art. XIV, § 1.3(15),

(16), (17).

 To evaluate license applicants, 19 CSR 30-95.025(4) directs the Department

to determine whether applicants meet minimum standards described in the

regulation. When more qualified applicants apply than there are available

licenses in a facility category, both the regulation and article provide for the

Department to “use a system of numerically scoring ten (10) additional evaluation

criteria to rank the applications in each such license . . . category against each

1
 The article also directs the Department to make available to the public application forms for
qualifying patient identification cards, qualifying patient cultivation identification cards, and
primary caregiver identification cards. Art. XIV, § 1.3(7).

 2
other.” 19 CSR 30-95.025(4); Art. XIV, § 1.3(1)(h). In further discussing how the

numerical scoring of evaluation criteria is to be conducted, the regulation

reiterates that “[e]ach type of facility . . . application will be scored and ranked

against the other applications of the same type.” 19 CSR 30-95.025(4)(C)2.A. The

article and regulation provide that an applicant may appeal the denial of a license

to the Administrative Hearing Commission (“AHC”). Art. XIV, § 1.3(23); 19 CSR

30-95.025(6). After the exhaustion of administrative review, the denial is subject

to judicial review. Id.

 Kings Garden Midwest, LLC (“Kings Garden”) applied for two medical

marijuana cultivation facility licenses. The Department denied both applications.

Kings Garden appealed the denials to the AHC. One of the allegations in Kings

Garden’s appeal was that its applications were subjected to an arbitrary and

capricious scoring process in which other applicants received different scores for

answers that were the same or substantially the same as the answers that Kings

Garden submitted. To prove this claim, Kings Garden requested in discovery that

the Department provide complete and unredacted copies of successful cultivation

license applications.

 The Department objected to the request, claiming that disclosure of this

information would violate its constitutional mandate to maintain the

confidentiality of information submitted by applicants and licensees. Kings

Garden filed a motion to compel and agreed to limit its request to only those

questions on the successful applications for which Kings Garden did not receive

 3
the full 10-point score. AHC Commissioner Renee T. Slusher granted the motion

to compel and ordered the Department to produce substantially all of the

documents that Kings Garden requested. Commissioner Slusher gave the

Department the option to redact applicants’ identifying information. She also

entered a protective order covering the produced documents.

 The Department filed a petition for writ of prohibition asking the circuit

court to bar enforcement of Commissioner Slusher’s order compelling it to

produce the information. The circuit court entered a preliminary order in

prohibition ordering Commissioner Slusher to “refrain from all action in the

premises until further order.” After briefing and argument, the court quashed the

preliminary writ and denied the Department’s petition for a permanent writ. The

court stayed the judgment for the later of 40 days or the final resolution of a

timely appeal. The Department appeals.

 STANDARD OF REVIEW

 When the circuit court issues a preliminary order but later denies a

permanent writ of prohibition, “the proper remedy is an appeal.” State ex rel.

Ashby Road Partners, LLC v. State Tax Comm’n, 297 S.W.3d 80, 83 (Mo. banc

2009). “Prohibition is an original remedial writ brought to confine a lower court to

the proper exercise of its jurisdiction.” Id. (citation omitted). A writ of prohibition

is appropriate to prevent “an abuse of judicial discretion, to avoid irreparable

harm to a party, or to prevent an abuse of extra-jurisdictional power.” Id. (citation

 4
omitted). “A writ of prohibition is discretionary, however, and there is no right to

have the writ issued.” Id. (internal quotation marks and citations omitted).

 ANALYSIS

 In its sole point on appeal, the Department contends that the circuit court

erred in quashing the preliminary writ and denying its petition for a permanent

writ of prohibition because it claims that Commissioner Slusher acted outside of

her authority by compelling the disclosure of the requested applicant data to

Kings Garden. The Department argues that it cannot be compelled to disclose

data submitted by medical marijuana license applicants because the Missouri

Constitution requires it to maintain the confidentiality of that information.

 The interpretation of a constitutional provision is a question of law, which

we review de novo. Gerken v. Sherman, 276 S.W.3d 844, 848 (Mo. App. 2009).

“Constitutional provisions are subject to the same rules of construction as statutes

except that consideration should be given to the broader purposes and scope of

constitutional provisions.” Brown v. Morris, 290 S.W.2d 160, 167 (Mo. banc 1956).

In ascertaining the meaning of a constitutional provision, “the court must first

undertake to ascribe to the words the meaning which the people understood them

to have when the provision was adopted.” Mo. Prosecuting Attorneys v. Barton

Cty., 311 S.W.3d 737, 741 (Mo. banc 2016) (citation omitted). We interpret the

words in the constitutional provision “to give effect to their plain, ordinary, and

natural meaning.” Wright-Jones v. Nasheed, 368 S.W.3d 157, 159 (Mo. banc

2012). “[D]ue regard is given to the primary objectives of the provision in issue as

 5
viewed in harmony with all related provisions, considered as a whole.” Mo.

Prosecuting Attorneys, 311 S.W.3d at 742 (citation omitted). We “must assume

that every word contained in a constitutional provision has effect, meaning, and is

not mere surplusage.” State v. Honeycutt, 421 S.W.3d 410, 415 (Mo. banc 2013).

 The constitutional provision at issue is Article XIV, Section 1.3(5), which

provides:

 The department shall maintain the confidentiality of reports or other
 information obtained from an applicant or licensee containing any
 individualized data, information, or records related to the licensee or
 its operation, including sales information, financial records, tax
 returns, credit reports, cultivation information, testing results, and
 security information and plans, or revealing any patient information,
 or any other records that are exempt from public inspection pursuant
 to state or federal law. Such reports or other information may be
 used only for a purpose authorized by this section. Any information
 released related to patients may be used only for a purpose
 authorized by federal law and this section, including verifying that a
 person who presented a patient identification card to a state or local
 law enforcement official is lawfully in possession of such card.

The Department argues that the intent of the voters in enacting this provision was

to mandate that it keep all information filed in medical marijuana license

applications strictly confidential and immune from disclosure under any

circumstances, including, as in this case, in response to a discovery request in the

appeal of a license denial.

 To support its argument, the Department relies on State ex rel. Department

of Social Services, Division of Children Services v. Tucker, 413 S.W.3d 646 (Mo.

banc 2013), a case in which the Supreme Court examined whether the Children’s

 6
Division could be compelled to produce in discovery information concerning

hotline reports that Section 210.150, RSMo Supp. 2012, mandated be kept

confidential. The Court began its analysis in Tucker by looking at whether any of

the statute’s stated exceptions to its general rule of confidentiality applied. Id. at

647-48. After determining that no exception applied to allow disclosure of the

information, the Court then stated that the statutorily mandated confidentiality “is

not overcome by demonstrating relevance or the absence of a traditional

evidentiary privilege.” Id. at 648. The Court explained that, while “the

confidentiality mandated by section 210.150 does not establish a legal privilege,”

it does mandate that the Children’s Division “keep confidential an entire body of

information.” Id. at 649. Thus, the Court ruled that the information was not

discoverable, and the circuit court abused its discretion in ordering its disclosure.

Id.

 The crucial distinction between Tucker and this case is that, while none of

the exceptions to confidentiality set forth in Section 210.150 applied to allow

disclosure of the statutorily mandated confidential information in that case, Article

XIV, Section 1.3(5) expressly allows the constitutionally mandated confidential

information in this case to be “used” for a purpose authorized by the section. The

second sentence of Article XIV, Section 1.3(5) states, “Such reports or other

information may be used only for a purpose authorized by this section.” In that

sentence, “this section” refers to Section 1.3. Subsection (23) of Section 1.3 gives

denied license applicants the right to appeal the Department’s denial to the AHC

 7
and, following the exhaustion of administrative remedies, the right to seek judicial

review. Because an appeal to the AHC and the courts is authorized by Section 1.3,

the plain language of Section 1.3(5) allows the confidential information to be used

for the purpose of an appeal of a license denial. Furthermore, because Section

1.3(5) does not limit the use of the information in an appeal of a license denial, the

information is subject to discovery as provided in 1 CSR 15-3.420, the regulation

governing discovery in contested cases before the AHC.

 In its appeal to the AHC, Kings Garden is seeking to discover information

from successful applications to prove that its applications were subjected to an

arbitrary and capricious scoring process in which successful applicants received

different scores for answers that were the same or substantially the same as the

answers that Kings Garden submitted. Article XIV, Section 1.3(1)(h) and the

Department’s regulations expressly direct the Department to score and rank

qualified applications against each other to decide which licenses to grant or

deny. Because applications are not judged solely on their own merits but are

ranked competitively against other applications, the only way to determine

whether the Department denied Kings Garden’s applications in an arbitrary or

capricious manner is to compare its applications against information from those

of successful applicants. To interpret Section 1.3(5) as not allowing the discovery

of information from the successful applications in the appeals process would lead

to the unreasonable and absurd result that unsuccessful applicants pursuing an

appeal – and, in turn, the AHC and the courts – would be denied access to

 8
information that was an integral part of the Department’s decision to deny their

applications. Without all of the information that formed the basis of the

Department’s decision, no meaningful review of that decision can occur. “Courts

should avoid constructions of the Missouri Constitution that are unreasonable or

would lead to absurd results.” Mo. Chamber of Commerce & Indus. v. Mo. Ethics

Comm’n, 581 S.W.3d 89, 92 (Mo. App. 2019). 2

 Because the plain language of Section 1.3(5) allows the confidential

information to be used for purposes of an appeal of the Department’s decision to

deny a license, Commissioner Slusher did not err in granting Kings Garden’s

motion to compel and ordering the production of certain confidential information

pursuant to a protective order.3 Consequently, the circuit court did not err in

denying the Department’s petition for a writ of prohibition. Point denied.

 CONCLUSION

 The judgment is affirmed.

 ____________________________________
 LISA WHITE HARDWICK, JUDGE

2
 The Department contends that allowing denied license applicants to discover information from
successful applications in the appeals process will open the door to the disclosure of medical
marijuana patients’ confidential information in domestic, personal injury, tort, worker’s
compensation, and other cases. We disagree. The use of any of this confidential information in
the types of cases cited by the Department would not be for a purpose authorized by Section 1.3,
as those cases are not an appeal of the denial of a license, license renewal, or identification card
pursuant to Section 1.3(23). Moreover, Section 1.3(5) provides extra protection for the disclosure
of patient information, as it expressly states that “[a]ny information released related to patients
may be used only for a purpose authorized by federal law and this section.” (Emphasis added.)
3
 The Department does not challenge the scope of the order on the motion to compel or the scope
of the protective order.

 9
ALL CONCUR.

 10