

# In the Missouri Court of Appeals
## Eastern District

| | |
|---|---|
| JAKE ZIMMERMAN, ASSESSOR, ST. LOUIS COUNTY, MISSOURI, | No. ED102716 |
| Appellant, | Appeal from the Circuit Court of St. Louis County |
| vs. | |
| MID-AMERICA FINANCIAL CORPORATION, | Hon. Richard C. Bresnahan |
| Respondent. | FILED: November 24, 2015 |

## Introduction

Appellant Jake Zimmerman, St. Louis County Assessor ("the Assessor"), appeals from the judgment of the Circuit Court of St. Louis County affirming the Decision and Order of the State Tax Commission ("the STC") in favor of Respondent Mid-America Financial Corporation ("Mid-America"). The STC's 2014 Decision and Order confirmed the STC Hearing Officer's decision finding that Assessor's 2007 assessment of real property owned by Mid-America located at 487 Smizer Mill Road ("the Property") was grossly excessive, and thereby, discriminatory. On appeal, the Assessor contends the STC erred in its decision for two reasons. First, the Assessor claims the STC unlawfully required a level of precision in assessment that is unattainable and higher than constitutionally required. Second, the Assessor argues the STC's decision is contrary to law and unsupported by competent and substantial evidence because the only evidence in the record of the fair market value of the Property was the St. Louis County Board of Equalization ("BOE") decision, which was not persuasive evidence.

Because competent and substantial evidence supports the STC's finding that the disparity between the Assessor's level of assessment for the Property in 2007 and the median level of assessment for commercial properties in St. Louis County in 2007 was so grossly excessive as to be inconsistent with an honest exercise of judgment, the STC did not err in concluding that the assessment of the Property constituted discrimination. Because Mid-America was entitled to present the BOE decision as its sole evidence of the fair market value of the Property, and because the STC acted within its discretion in concluding that the BOE determination was competent and persuasive evidence, the STC did not err in its valuation finding. Accordingly, we affirm the judgment of the Circuit Court.

### Factual and Procedural History

In 2007, Mid-America received a Change of Assessment Notice for the Property regarding Mid-America's tax liability for tax year 2007. The Assessor determined the fair market value ("FMV")[1] of the Property to be $1,460,800. The Assessor then calculated the assessed value for the Property at $467,450 using an assessment ratio of 32%.[2]

Mid-America appealed the Assessor's $1,460,800 valuation of the Property to the St. Louis County Board of Equalization ("BOE"). The BOE held a hearing at which the Assessor and Mid-America each presented evidence as to the FMV of the Property. On August 9, 2007, the BOE issued a decision determining the FMV of the Property for the year 2007 to be $1,122,000.

---

[1] FMV is also referred to by the STC and Missouri courts as "true value." The terms are used interchangeably.
[2] The assessed value of a given piece of property is a percentage of the FMV of the property which serves as the basis for calculating real estate tax liability. Assessed value is determined by multiplying the assessment ratio by the FMV of the property. The assessment ratio is set by statute and varies for different classifications of property. Commercial real estate in Missouri is taxed using a 32% assessment ratio. Section 137.115.5(3) RSMo. For example, a parcel of commercial property with FMV of $10,000,000 would have an assessed value of $3,200,000 (10,000,000 x .32). The assessed value is then used as the basis for determining the property owner's real estate tax liability for that property.

2

On September 5, 2007, Mid-America filed a Complaint for Review of Assessment with the STC alleging discrimination. Specifically, Mid-America's Complaint cited "discrimination based on level of assessment ratio" as the basis for its appeal to the STC. Mid-America clarified that it did not challenge the $1,222,000 FMV of the Property as found by the BOE, but only disputed the assessment ratio of 32% applied by the Assessor to determine the assessed valuation.

Mid-America's appeal to the STC was one of several hundred such appeals filed alleging discrimination for tax year 2007. To expedite those appeals, the STC bifurcated the issues. The STC first held an evidentiary hearing to determine the median level of assessment for commercial properties in St. Louis County for 2007.[3] On December 7, 2010, the STC conducted the evidentiary hearing. The taxpayers presented expert testimony that commercial properties in St. Louis County in 2007 were, on average, assessed at 26.6% of their FMV, or true value. The Assessor presented expert testimony that those properties were assessed at 29.4% of their FMV. On April 29, 2011, the STC Hearing Officer issued a Decision and Order finding the median level of assessment for commercial properties in St. Louis County in 2007 to be 29.4%—that is, such properties, on average, were assessed at 29.4% of FMV in tax year 2007.

The adjudication of Mid-America's appeal resumed in 2013, with proceedings conducted to determine the FMV of the Property and whether discrimination had in fact occurred. Mid-America submitted the BOE's 2007 decision that the FMV of the Property was $1,122,000 as its evidence of FMV. The Assessor did not submit any exhibits or written direct testimony; nor did

---

[3] The median level of assessment, frequently referred to as the average level of assessment by Missouri courts, represents the median assessment ratio, as a percentage of FMV, applied by the Assessor to similarly situated properties (here, commercial properties in St. Louis County) in a given tax year. The median level of assessment represents at what percentage of FMV a class of properties, on average, has been assessed in a certain year. As will be explained later, the STC's discrimination analysis involves comparing the median level of assessment to the level of assessment actually applied to the complaining taxpayer's property by the Assessor.

3

the Assessor object to Mid-America's evidence of valuation or file any rebuttal exhibits. The Assessor chose not to request a hearing. Accordingly, the STC Hearing Officer rendered a decision based on the totality of the previously submitted evidence and briefs of the parties.

On December 12, 2013, the Hearing Officer entered a Decision and Order. The Hearing Officer upheld the BOE's finding that the FMV of the Property was $1,222,000 and also concluded that Mid-America had "presented substantial and persuasive evidence as to discrimination." The Hearing Officer made the following findings of fact: (1) the Assessor appraised the Property at $1,460,800, resulting in an assessed value of $467,450; (2) the BOE determined the FMV of the Property to be $1,122,000; and (3) the STC previously found that the median level of assessment for commercial property in St. Louis County in 2007 was 29.4%, a decision which the Hearing Officer incorporated by reference.

Based on these factual findings, the Hearing Officer made conclusions of law as to both valuation and discrimination. The Hearing Officer noted that Mid-America relied upon the BOE's decision as its evidence of the FMV of the Property. The Hearing Officer concluded that Mid-America was entitled to present evidence of FMV in the form of a BOE decision, explaining that the Missouri Supreme Court has held that the STC "cannot compel a taxpayer to present evidence in a particular form." The Hearing Officer concluded that Mid-America's exhibit, consisting of the BOE decision, established the FMV of the Property, and confirmed a FMV of the Property of $1,122,000. The Hearing Officer also concluded that the BOE decision served to satisfy the first prong of the test to prove discrimination, which required Mid-America to prove the FMV of the Property on January 1, 2007. The second prong of the discrimination test, the Hearing Officer explained, required Mid-America to prove discrimination either by showing an

4

intentional plan of discrimination by the Assessor or by showing that the level of assessment was "so grossly excessive as to be inconsistent with an honest exercise of judgment."

With no evidence of any intentional plan of discrimination, the Hearing Officer considered whether Mid-America presented substantial and persuasive evidence that the level of assessment applied to the Property was so grossly excessive as to be inconsistent with an honest exercise of judgment. In making this determination, the Hearing Officer explained that courts and the STC "refrain from correcting assessments which reflect no more than *de minimus* errors of judgment on the part of assessors." To determine if the Assessor's assessment constituted discrimination, the Hearing Officer compared the median, or actual, level of assessment for commercial properties in St. Louis County in 2007 to the level of assessment imposed by the Assessor on the Property in 2007. The Hearing Officer first noted that the STC previously found the median level of assessment for commercial properties in St. Louis County in 2007 to be 29.4%. Using that number, the Hearing Officer concluded as follows:

> The subject property's assessed value as determined by the Assessor was $467,450 using an assessment ratio of 32%. The subject property's assessed value using the [BOE's] determination of true value and a median assessment ratio of 29.4% is $329,870.[4] The difference between the assessed values is $137,580. The subject property was assessed at 42% of its true value.

Because the Property had been assessed at 42% of its FMV as opposed to the median level of assessment of 29.4%, the Hearing Officer found that Mid-America demonstrated that the Assessor's 2007 assessment of the Property "was more than a *de minimus* error in judgment", and established a right to have the "assessment reduced to the percentage of that value at which others are taxed." As a result of the finding of discrimination, the Hearing Officer ordered that the assessed value of the Property for 2007 be set at $329,870.

---

[4] The Hearing Officer calculated $329,870 as the proper assessed value for the Property by applying the median assessment ratio, 29.4%, to the FMV of the Property, $1,122,000: (.294 x $1,122,000 = $329,870).

On January 17, 2014, the Assessor filed an appeal with the STC challenging the Hearing Officer's Decision and Order. The Assessor asserted that the Hearing Officer erred: (1) in allowing Mid-America to use the BOE decision as evidence of the FMV of the Property, and in presuming that the BOE's valuation was correct;[5] (2) in holding that the median level of assessment was 29.4% and applying that assessment ratio;[6] (3) in finding that Mid-America presented substantial and persuasive evidence of discrimination; and (4) in making an internally inconsistent determination relative to the presumption of correct assessment by the BOE.

The STC entered an Order affirming the Hearing Officer's Decision and Order on May 12, 2014. With respect to the issue of valuation, the STC rejected the Assessor's argument that Mid-America was required to independently prove the FMV of the Property by some means other than the BOE decision. The STC explained that "a taxpayer can elect to present the BOE appraised or fair market value as their only evidence of the true value in money of the property under appeal," noting that the Missouri Supreme Court in State ex rel. Ashby Rd. Partners, LLC v. State Tax Comm'n, 297 S.W.3d 80 (Mo. banc 2009), "established that a property owner cannot be compelled to present evidence in any particular form." The STC further noted that the BOE decision was the "only valuation evidence in the record." The STC also rejected the Assessor's argument that the Hearing Officer erred in presuming the BOE's valuation to be valid and correct. The STC noted that the BOE's assessment enjoys a presumption of validity, good faith, and correctness, and further noted that the Assessor did not object to the admission of the BOE decision into evidence.

With regard to the finding of discrimination, the STC rejected the Assessor's argument that the Hearing Officer was required to compare the median level of assessment of 29.4% to the

---

[5] This allegation of error is substantially the same as the Assessor's second point on appeal.
[6] The arguments the Assessor advanced in support of this allegation of error were substantially the same as those found in the Assessor's first point on appeal.

6

statutory assessment ratio of 32% in order to determine the excessiveness, if any, of the assessment. The STC concluded that the comparison suggested by the Assessor was "simply ... not the appropriate methodology," and is not the standard adopted by either the STC or the Missouri Supreme Court. Instead, the STC clarified that Missouri case law requires a comparison "not between the median assessment ratio and the statutory assessment ratio, but between the average level of assessment and the actual level of assessment for the subject property." The STC found that the Hearing Officer "correctly and properly made this comparison and evaluation, ascertaining the subject property's assessed value using the statutory ratio applied to the true value in money set by the [BOE] and the subject property's assessed value using the median assessment ratio" of 29.4%. The STC concluded that the "difference in the two assessed values was grossly excessive," noting that neither the Missouri Supreme Court nor the STC had established a bright line test for "grossly excessive" assessments.

The STC likewise rejected the Assessor's contention that the Hearing Officer's decision as to discrimination was not based upon substantial and persuasive evidence. The STC found that there were only two elements to be established before the Hearing Officer: the FMV of the Property and the median assessment ratio for commercial properties in St. Louis County in 2007. The STC concluded that the evidence it considered and upon which it relied with respect to each element was "irrefutable, unchallenged, [and] unrebutted," and thus, was substantial and persuasive.

Finally, the STC concluded that the Assessor's complaint that the Hearing Officer's decision was "internally inconsistent" both "misstates the action of the Hearing Officer and fails to grasp the two elements of an assessment." The STC explained the BOE's determination that the FMV of the Property was $1,122,000 was not rebutted. However, the appropriateness of the

7

32% assessment ratio used by the Assessor to determine the assessed value of the Property was rebutted by the evidence. Although the BOE appropriately applied the statutory 32% assessment ratio to determine the Property's assessed valuation, evidence presented after the BOE decision established that the correct assessment ratio to apply was 29.4%. As a result, the STC concluded that "[t]here is no inconsistency in the determinations and conclusions of the Hearing Officer that the Board's appraised value stands, but the statutory assessment ratio in this appeal falls and the correct ratio of 29.4% must be applied. The Decision correctly recognized the two separate factors of the discrimination equation – value and ratio."

Following the STC's Order affirming the Hearing Officer's decision, the Assessor timely filed a Petition for Review of Administrative Decision with the Circuit Court. On January 29, 2015, the Circuit Court affirmed the STC's decision. This appeal follows.

## Points on Appeal

The Assessor presents two points on appeal. First, the Assessor contends the STC erred in its decision because the STC unlawfully required a level of precision in assessment that is unattainable and higher than constitutionally required. Second, the Assessor claims the STC erred in its decision because the decision is contrary to law and unsupported by competent and substantial evidence. Specifically, the Assessor argues that the only evidence in the record of the FMV of the Property was the BOE decision, which was not persuasive evidence that the already reduced assessment required further reduction in order to satisfy constitutional uniformity requirements.

8

## Standard of Review

This Court reviews the decision of the administrative agency and not the judgment of the trial court. Bateman v. Rinehart, 391 S.W.3d 441, 444 (Mo. banc 2013). On appeal, we must determine whether the STC's decision: (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion. Id. at 444-45.

In matters of property tax assessment, the Missouri Supreme Court has acknowledged "the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field." Savage v. State Tax Comm'n of Missouri, 722 S.W.2d 72, 75 (Mo. banc 1986). Thus, we recognize that the courts may not assess property for tax purposes, that proper methods of valuation and assessment of property are delegated to the STC, and that on review, "the evidence must be considered in the light most favorable to the administrative body, together with all reasonable inferences which support it, and if the evidence would support either of two opposed findings, the reviewing court is bound by the administrative determination." Id. Missouri case law demonstrates that this Court is loath to substitute its judgment for the expertise of the STC in matters of property tax assessment. Id. As a result, absent clear abuse, we will "stay our hands." Id.

This Court will defer to the STC's judgment regarding factual matters; however, the STC's decision interpreting constitutional law is reviewed *de novo* and will be upheld only when its decision is authorized by law and supported by competent and substantial evidence upon the record. Bateman, 391 S.W.3d at 445.

9

## Discussion

## I. Point One—Discrimination

One of the bases upon which a taxpayer may appeal a BOE decision to the STC is discrimination. Upon showing discrimination, a taxpayer has the right to have his "assessment reduced to the percentage of that value at which others are taxed." Savage, 722 S.W.2d at 79. (emphasis added).

In order to obtain a reduction in assessed value based upon discrimination, the complaining taxpayer must (1) prove the true value (also known as the FMV) of the subject property as of the taxing date; *and* (2) show an intentional plan of discrimination by the Assessor resulting in an assessment at a greater percentage of value than other property within the same class and the same taxing district, *or* in the absence of such an intentional plan, show that the level of assessment is "so grossly excessive as to be inconsistent with an honest exercise of judgment." Id. at 78. By requiring that the level of an assessment be so grossly excessive as to be inconsistent with an honest exercise of judgment in cases in which intentional discrimination is not shown, the courts and the STC "refrain from correcting assessments which reflect no more than *de minimus* errors of judgment on the part of assessors." Id. at 78-79. This standard recognizes that "while practical uniformity is the constitutional goal, absolute uniformity is an unattainable ideal." Id. at 79. A taxpayer pursuing a discrimination claim must prove both the FMV of his property and, in relevant part here, that the level of assessment is so grossly excessive as to be inconsistent with an honest exercise of judgment. Ashby Road, 297 S.W.3d at 80.

The Missouri Supreme Court has held that the proper method in analyzing discrimination compares the median level of assessment for similarly-situated properties—here, commercial

properties in St. Louis County for the tax year 2007—to the *actual* level of assessment imposed on the Property. A necessary component of this comparison is the FMV, or true value, of both the subject property and the similarly-situated properties. See Savage, 722 S.W.2d at 74 (affirming STC decision that compared the "average level of assessment of real property in Greene County" in terms of percentage "of true value in money" to the assessment of the taxpayer's property in terms of percentage of "true value in money"); Ashby Road, 297 S.W.3d at 85 ("Inherent in a discrimination action is the comparison of the assessor's determination of true market value of the property claimed to be discriminated against with that of other property in the same class"). Once the FMV of each has been determined, the STC can calculate *at what percentage of FMV* the subject property and the similarly-situated properties, respectively, have been assessed.

Here, the Assessor contends that the STC erred in its decision affirming the Hearing Officer's finding of discrimination because it unlawfully required a level of precision in assessment that is unattainable and higher than constitutionally required. The Assessor advances two interrelated allegations of error in support of its claim. First, the Assessor claims the Hearing Officer improperly calculated the level of assessment for the Property, leading to an erroneous conclusion as to discrimination. Second, the Assessor claims the Hearing Officer and STC erred in finding discrimination because the disparity between the level of assessment for the Property and the median level of assessment for commercial properties in St. Louis County in 2007 was a *de minimus* error, and therefore, as a matter of law, was not so grossly excessive as to be inconsistent with an honest exercise of judgment. We will address each argument in turn.

11

A. The STC properly found that the Property was assessed at 42% of FMV.

The Hearing Officer determined, and the STC confirmed, that the Assessor discriminated against Mid-America by virtue of its assessment of the Property for tax year 2007. The basis for the STC's discrimination finding was that the level of assessment for the Property, as compared to the median level of assessment for commercial properties in St. Louis County, was "so grossly excessive as to be inconsistent with an honest exercise of judgment," and represented more than simply a *de minimus* error in judgment on the part of the Assessor. Central to the STC's conclusion was the Hearing Officer's finding that the Assessor assessed the Property at 42% of its FMV, while commercial properties in St. Louis County in 2007 were assessed on average at 29.4% of their FMV.

When determining the 2007 assessed valuation for the Property, the Assessor applied the statutory 32% assessment ratio to the FMV of $1,460,800. These facts are not disputed. The parties also do not dispute that the Hearing Officer's 2013 Decision and Order determined the FMV of the Property to be $1,122,000, and further determined the average level of assessment for commercial property in St. Louis County in 2007 to be 29.4%, based on the 2011 STC decision to that effect.

The Assessor notified Mid-America that the assessed value of the Property in 2007 was $467,450. The Assessor determined the assessed value by multiplying the assessment ratio of 32% by the FMV of $1,460,800. Conversely, in 2013, the STC Hearing Officer used the updated assessment ratio of 29.4% and FMV of $1,222,000 to calculate an assessed value for the Property of $329,870. For purposes of illustration, these figures and calculations are set out in the table below.

12

|  | Assessment Ratio | FMV Figure | Assessed Value |
|---|---|---|---|
| Assessor (2007) | 32% | $1,460,800 | (.32) x $1,460,800 = **$467,450** |
| STC (2013) | 29.4% | $1,122,000 | (.294) x $1,122,000 = **$329,870** |

In analyzing whether discrimination occurred, the Hearing Officer compared these two assessed value figures—that is, the assessed value originally calculated by the Assessor in 2007 using both the original FMV determination and the original statutory assessment ratio; and the assessed value calculated by the Hearing Officer using the revised FMV and assessment ratio figures. Based on the difference between the two assessed values, the Hearing Officer calculated that the Assessor assessed the Property at 42% of its FMV. The Hearing Officer's comparison highlighted the percentage of FMV at which the Property had been assessed by the Assessor in relation to the 29.4% of FMV at which the similarly-situated properties were assessed on average in 2007. Stated another way, the Hearing Officer could have also calculated the 42% level of assessment by dividing the Assessor's assessed value, $467,450, by the true FMV of the Property, $1,122,000. This straight-forward calculation is illustrated below.

| Assessed Value divided by FMV | Level of Assessment |
|---|---|
| $\dfrac{467,450}{1,122,000}$ | = .42 (or 42%) |

The Hearing Officer then compared the two levels of assessment, 29.4% and 42%, respectively, and concluded that the disparity between the two represented more than a *de minimus* error on the part of the Assessor.[7] Finding discrimination, the Hearing Officer reduced

---

[7] While the Hearing Officer's decision did not actually calculate the disparity between 42% and 29.4%, applying the numbers to a simple calculation reveals a 43% difference: ((.42 - .294) / .294)) = .43, or 43%.

the assessed value for the Property to $329,870 by applying an assessment ratio of 29.4%. The STC affirmed the Hearing Officer's findings and decision.

The Assessor challenges the Hearing Officer's calculation methodology. The Assessor maintains the BOE reduced the FMV of the Property from $1,460,800 to $1,122,000, and therefore the $1,460,800 valuation is irrelevant and should not have been used by the STC in its discrimination analysis. By extension, the Assessor argues the STC erroneously relied upon the assessed value of $467,450 in calculating the Property's level of assessment, as that valuation was derived from the original $1,460,800 FMV which was later modified by the BOE. Instead, the Assessor reasons that the STC should have calculated the assessed value of the Property using the $1,122,000 FMV, which would have significantly reduced the level of assessment for the Property to 32%.

Comparing the 32% level of assessment urged by the Assessor to the 29.4% median level of assessment for commercial properties in St. Louis County results in a disparity between the respective levels of assessment of only 8%, which the Assessor claims is *de minimus*.[8] The tables below illustrate the effect on the level of assessment calculation for the Property when the assessed value figure advocated by the Assessor is used.

| Assessment Ratio actually applied by Assessor | FMV figure proposed by Assessor | Assessor's proposed assessed value |
|---|---|---|
| 32% | $1,122,000 | (.32) x $1,122,000 = **$359,040** |

| Assessed Value divided by FMV | Level of Assessment |
|---|---|
| $\dfrac{359,040}{1,122,000}$ | = .32 (or 32%) |

---

[8] Again, this number is calculated by the following equation: ((.32 - .294) / .294)) = .08, or 8%.

While we recognize the existence of some authority supporting the Assessor's position that an 8% differential in the assessed valuations may be deemed *de minimus*, we are not persuaded that the Accessor has accurately calculated the valuation differential. Given the record before us, we find the Assessor's arguments unavailing and the Assessor's critiques of the STC decision and methodology to be without merit. The Assessor's proposed method of calculating the Property's level of assessment is contrary to well-established legal precedent. Notably, the analysis advocated by the Assessor totally ignores the assessed value of the Property determined by the Assessor, which was the basis of Mid-America's 2007 tax bill. Instead, the Assessor argues the STC must compare the *median level of assessment* of commercial properties in St. Louis County in 2007 to the *assessment ratio* the Assessor initially applied to the Property.[9] The Assessor's approach presents a superficially inviting analysis—but an analysis that fails upon critical review.

Missouri courts have been clear and consistent in holding that (1) a taxpayer alleging discrimination must show the FMV of his property as a necessary part of his discrimination claim; and (2) the proper method of determining discrimination is to compare the *actual level of assessment of the subject property as determined by the assessor* to the median level of assessment for similarly-situated properties. Savage, 722 S.W.2d at 72; (emphasis added) Ashby Road, 297 S.W.3d at 80. The latter holding logically reinforces the former; determining the level of assessment requires calculating at what percentage of a property's FMV the property has been assessed, making FMV an indispensable part of the equation.

Here, the median level of assessment for commercial properties in St. Louis County in 2007 was determined by the STC in a 2011 proceeding. The STC heard competing expert

---

[9] In its brief, the Assessor argues that because "the median level of... 29.4% is within 8% of the statutorily required ratio of 32%," the evidence before the STC was insufficient to support a finding of discrimination. (App. Brief 13).

15

testimony about the percentage of FMV value at which those properties were, on average, assessed in tax year 2007, and concluded that the median level of assessment was 29.4%. The Hearing Officer applied precisely the same formula in concluding that the Property was assessed at 42% of its FMV by the Assessor, using the FMV, assessment ratio, and assessed value actually calculated and applied by the Assessor in determining Mid-America's 2007 tax liability. See, e.g., Savage, 722 S.W.2d at 74. Based on the above comparison, the Hearing Officer concluded that discrimination had occurred and reduced the assessed value of the Property accordingly. The STC subsequently affirmed.

We agree with the STC's decision affirming the Hearing Officer's methodology and findings. The STC correctly found that comparing the median level of assessment to the statutory assessment ratio is not the standard adopted by the STC or the Missouri Supreme Court in cases of alleged discrimination. Instead the STC, citing Savage and West County BMW v. Muehlheausler,[10] clarified that Missouri case law requires a comparison "not between the median assessment ratio and the statutory assessment ratio, but between the average level of assessment and the actual level of assessment for the subject property." The STC found that the Hearing Officer correctly made the proper comparison.

The Assessor's argument misses the point of discrimination claims. The central question before the STC was whether the *Assessor* discriminated against Mid-America by virtue of the actual level of assessment the Assessor imposed upon the Property in *2007*. The Assessor may not retroactively substitute the FMV determination of the BOE, a separate entity, for its own valuation in order to diminish the severity of its over-assessment of the Property. Further, as the STC explained, the Assessor's position fails to recognize the "two separate factors of the discrimination equation"—value *and* ratio. This principle is precisely why the STC could not

---

[10] West County BMW v. Muehlheausler, STC Appeal No. 05-12569 (March 17, 2009).

16

compare 32% to 29.4%, and why the Assessor's determination of the Property's FMV and assessed value simply may be not ignored.

The STC's decision was supported by competent and substantial evidence. The Hearing Officer and the STC each applied the proper methodology, as clearly articulated by the Missouri Supreme Court precedent, and correctly concluded that the Property was assessed at 42% of its FMV by the Assessor in 2007.

B. The STC did not err in finding discrimination.

Having determined that the STC used the proper methodology to analyze the issue of discrimination, and having confirmed the correctness of the STC's finding that the Property was assessed at 42% of its FMV by the Assessor in 2007, we now consider whether the STC lacked sufficient evidence to support its finding of discrimination.

The Hearing Officer found that Mid-America established that the difference between the median level of assessment for commercial properties in St. Louis County in 2007 and the actual level of assessment imposed on the Property by the Assessor was discriminatory—that is, it was so grossly excessive as to be inconsistent with an honest exercise of judgment by the Assessor. The Hearing Officer specifically found that Mid-America established that the Assessor's assessment of the Property "was more than a *de minimus* error in judgment."

Both parties agree that neither Missouri courts nor the STC has established a "bright-line" test to identify what constitutes a grossly excessive assessment as opposed to a mere *de minimus* error in judgment. The STC's decision affirmed this reality, noting that no bright-line test exists "to identify grossly excessive assessment in discrimination cases," and instead explaining that "[t]he assessment in each given case must be analyzed against the assessment under the median ratio to address the grossly excessive factor."

17

The Assessor, operating under the incorrect assumption that the STC should have found the Property was assessed at 32% of its FMV, rather than 42%, calls for this Court to establish a 10% bright-line test.[11] In other words, the Assessor argues that any difference between median and actual level of assessment less than 10% should be considered *de minimus* as a matter of law. Because the difference between the median and actual levels of assessment in this case exceeds 10%, we decline the Assessor's invitation to create such a bright-line test.

The competent and substantial evidence in the record clearly shows that the Assessor's assessment of the Property, as compared to the median level of assessment for commercial properties in St. Louis County in 2007, constituted a disparity so grossly excessive as to be inconsistent with an honest exercise of judgment by the Assessor. The evidence shows a disparity between the respective levels of assessment of 43%, calculated as follows:

$$\frac{(.42 - .294)}{.294} = .43 \text{ (or 43\%)}$$

While there is no bright-line test to determine when an assessment is grossly excessive, we note for purposes of comparison that the disparity in this case is similar to the 59% disparity in Savage,[12] in which discrimination was found, and very far removed from the 5% disparity in Town & Country Racquet Club,[13] in which the disparity was deemed *de minimus*.

Based on competent and substantial evidence in the record, the STC found that the median level of assessment for commercial properties in St. Louis County in 2007 was 29.4%, while the Property was assessed at 42% of its FMV in the same tax year. The assessed value determined by the Assessor is 43% greater than what the assessed value should have been. We

---

[11] The Assessor's proposed methodology would produce a disparity of only 8%, using the following calculation: ((.32 - .294) / .294)).

[12] Savage, 722 S.W.2d at 79 (calculated based on median level of assessment of 20.5% and actual level of assessment of 33.3%).

[13] Town & Country Racquet Club v. Morton, 1989 WL 41005 at *13 (calculated based on median level of assessment of 30.48% and actual level of assessment of 32%).

hold that such a disparity is so grossly excessive as to be inconsistent with an honest exercise of judgment. Accordingly, the STC did not err in determining that the difference between the median level of assessment and the level of assessment for the Property was unconstitutionally discriminatory. Point One is denied.

## II. Point Two—Valuation

The Assessor next argues that the STC unlawfully allowed Mid-America to rely on the BOE's determination of the Property's value as its sole evidence of FMV. The Assessor correctly notes that Mid-America was required to establish the FMV of the Property as one of the two required elements of its discrimination claim. The Assessor contends, however, that the BOE determination of FMV cannot serve as competent or persuasive evidence of the FMV of the Property.

The Assessor's argument is premised upon its misreading of the Missouri Supreme Court's decision in Ashby Road. In Ashby Road, a group of property owners alleged discrimination by the Assessor. The property owners sought a writ to prohibit the STC from requiring the property owners to prove the FMV, or true market value, of their properties. The property owners argued that because they did not dispute the Assessor's original FMV determinations, they were not required to prove their properties' market values as part of their discrimination claims. In part, the property owners wanted to avoid presenting evidence of the FMV of their properties because they were fearful the Assessor could use that evidence to advocate for higher market values.[14] The property owners hoped to simply present the Assessor's value determination as definitive proof of the FMV of their properties and avoid having to obtain "expensive" independent commercial appraisals. The STC held that in order to

---

[14] The Court held that the property owners' FMV evidence could not be used by the assessor to advocate for higher market values.

19

show discrimination, the property owners were required to prove the FMV of their properties. The STC stated that the property owners could show true market value through several methods, but regardless of the method chosen, the FMV of the properties was relevant and necessary to the discrimination claims and therefore must be proven. The Supreme Court agreed, holding that proof of the FMV of the properties was necessary to prove the property owners' discrimination claims.

Having held that the property owners were required to present FMV evidence in order to show discrimination, the Court also explained two important principles about that evidence. First, the Court emphasized that the taxpayer bears the burden of establishing discrimination. Second, the Court stated that despite this burden, taxpayers seeking to prove discrimination "cannot be compelled to present evidence in any particular form." Id. at 88. Within the context of these general rules, the Court proceeded to explain in the following paragraph that the property owners were free to "choose to present the Assessor's values of their properties as their only evidence of the properties' true market values." Id. The Court cautioned, however, that as the party with the burden of proof, the property owners' "chosen evidence must persuade the [STC] that the Assessor discriminated against them … and, if their evidence does not persuade, property owners will lose their claim." Id. Stated another way, the Court explained that although the property owners may choose to present the Assessor's FMV as its evidence of valuation, the STC was "not compelled" to simply accept the Assessor's values as the properties' true market values. Id. at 85.

Recognizing that the Assessor and the BOE are distinct and separate entities, the Assessor argues that Ashby Road stands for the narrow proposition that a taxpayer may present only the *Assessor's* value as its sole evidence of FMV. The Assessor posits that Ashby Road

20

provides no support for the proposition that a taxpayer may present the *BOE's* valuation as its only evidence of FMV. In support of this position, the Assessor points to the Court's statement that "[p]roperty owners can choose to present the assessor's values of the properties as their only evidence of the properties' true market values." Id. at 88. Based upon this language, the Assessor concludes that "[n]othing in the law relieves the taxpayer of its burden to prove the market value of its property by substituting the decision of the BOE for 'evidence.'" We respectfully disagree.

The Supreme Court's language in Ashby Road could not have been clearer: "Although property owners, as taxpayers, have the burden to prove discrimination, *they cannot be compelled to present evidence in any particular form.*" Id. (emphasis added). The language found in the following paragraph, which the Assessor cites in support of its position, was clearly *not* intended to function as a limitation on this general rule. No such limitation is either expressly or impliedly articulated in the Court's opinion. To the contrary, when viewed in the proper context, it is quite evident that the Court simply applied the general rule to the specific facts before it: the property owners in Ashby Road presented the Assessor's valuation as evidence of the FMV of their properties, and the Court allowed them to do so. The central thrust of the Supreme Court's holding, then, was that the property owners could submit the Assessor's values as their sole evidence of FMV, and in fact could submit evidence in any form they desired, but the STC was not compelled or required to find said evidence persuasive. The holding of Ashby Road is simple—a taxpayer may present evidence as to FMV in *any* form he or

21

she so chooses, but because the taxpayer bears the burden of proving discrimination, he or she does so at his or her own risk—the risk that the STC may not be persuaded by the evidence.[15]

Mid-America was entitled to present to the STC its evidence as to FMV in any form. Mid-America chose to present the BOE decision as its sole evidence of the FMV of the Property. Whether Mid-America's evidence was persuasive was a determination for the STC, in its discretion, to make. The BOE decision was accepted into evidence in the proceedings before the Hearing Officer without objection, and, in fact, the BOE valuation was the only evidence of FMV submitted by either party. The Hearing Officer concluded that Mid-America's exhibit consisting of the BOE decision established the FMV of the Property and satisfied the first prong of the discrimination test. Accordingly, the Hearing Officer found the FMV of the Property to be $1,122,000. The STC, citing Ashby Road, upheld the Hearing Officer's decision and noted that "a taxpayer can elect to present the BOE appraised or fair market value as their only evidence of the true value in money of the property under appeal."

The Assessor nevertheless claims that the BOE decision cannot serve as *persuasive* evidence of the FMV of the Property. Specifically, the Assessor argues that "it is illogical and absurd for the STC to set aside and further reduce the BOE assessment while at the same time relying on that very assessment as proof of true market value." This argument is fundamentally misguided. The STC addressed precisely the same argument in its Decision and Order, explaining that the Assessor's claim "misstates the action of the Hearing Officer and fails to grasp the two elements of an assessment"—FMV and assessment ratio. Because the BOE determination took place before the correct assessment ratio of 29.4% was determined, and because the BOE only makes findings as to valuation, the STC correctly concluded that "[t]here

---

[15] We additionally note that the Assessor's interpretation would produce an absurd, internally inconsistent result in which the Supreme Court articulated a general rule only to contradict and limit that rule in the very next paragraph of its opinion.

is no inconsistency in the determinations and conclusions of the Hearing Officer that the Board's appraised value stands, but the statutory assessment ratio in this appeal falls and the correct ratio of 29.4% must be applied."

The STC's findings that Mid-America was entitled to present the BOE decision as evidence of the FMV of the Property for purposes of discrimination and that the BOE valuation evidence could serve as persuasive evidence were lawful and supported by competent and substantial evidence. Further, the Hearing Officer and STC acted well within their sound discretion in concluding that the BOE determination was competent and persuasive evidence of the FMV of the Property. We are mindful that proper methods of valuation and assessment of property are delegated to the STC, and that, on review, the evidence must be considered in the light most favorable to the STC's decision. Savage, 722 S.W.2d at 75. Point Two is denied.

Conclusion

Finding no error, the judgment of the Circuit Court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

23