EDWARD R. ARDINI, JR., JUDGE
Edward J. and Patricia A. Crowell ("the Crowells") appeal from a Platte County Circuit Court judgment affirming a decision and order of the Missouri State Tax Commission ("the Commission"). The Commission had rejected the Crowells' claim that the 2015 assessment of their property by the Platte County Assessor ("Assessor") was discriminatory when compared to other similarly situated properties. Finding the Commission's decision was based on substantial evidence, and was not arbitrary, capricious, unreasonable, or unlawful, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND[1]
In 2014, the Crowells bought residential property in Parkville, Missouri ("the property"). The property's assessment and sales history, in pertinent part, is as follows. The property was built in 1910. From 2001 to 2006, the property's appraised value was $48,832[2] and its assessed value was $9,278.[3] Sometime prior to 2007, the property was extensively repaired, renovated, and altered. In 2007, the property's appraised value was increased to $57,645 following a county-wide reassessment of all properties. In December of 2007, the property was sold for $234,000. In 2008, the property's appraised/assessed values increased to $230,660/$43,825. These valuations were applied to the property for tax assessment purposes from 2008 through 2014. The property's owners during that period did not protest the appraised/assessed values. In October 2014, the property was purchased by the Crowells for $230,000. The Crowells paid their pro-rata share of the 2014 property taxes at the time of closing.
After purchasing the property, the Crowells researched its assessment and sales history. This review prompted the Crowells to contact Assessor and engage *886 in informal negotiations to have the appraised and assessed values of their property reduced. In May 2015, Assessor advised that he would reduce the appraised/assessed values on the property from $230,660/$43,825 to $210,660/$40,025.
Dissatisfied with the reduction, the Crowells continued their discussions with Assessor. Assessor suggested that the county appraiser visit the property. In July 2015, the county appraiser determined that no further reduction was warranted.
The Crowells appealed the assessed valuation of their property to the Platte County Board of Equalization ("BOE").[4] At the BOE hearing, the Crowells argued the 2008 assessment violated section 137.115.1[5] and the Equal Protection Clause of the United States Constitution. Assessor offered a copy of the July 2015 appraisal prepared by the county appraiser setting the property's value at $210,660. The BOE affirmed the $210,600 valuation.
The Crowells filed a Complaint for Review of Assessment with the Commission,[6] which was a pre-printed form provided by the Commission. The form required the Crowells to check a box stating their grounds for appeal; they checked the box for "discrimination."[7] A hearing was conducted before a hearing officer at which the Crowells introduced-and the hearing officer received-the following exhibits:
Exhibit A Building Permits and Occupancy Permit Exhibit B Assessment History of Subject Property from 2001-2014 Exhibit C Building Permits on Adjacent Property Exhibit D Web-shot from Platte County Website Exhibit E Email from Respondent Cox to Complainant Edward Crowell Exhibit F Email from Complainants to Respondent Cox Exhibit G Letter from Respondent Cox to Complainants Exhibit H Record Card on Subject Property Exhibit I Sales and Assessment History of Subject Property and Others and Appraisal Report Exhibit J Summary of Various Properties Tax Per Square Feet
Exhibit I included the July 2015 county appraiser's report of the Crowells' property, which contained information pertaining to five comparable properties. Mr. Crowell used that information to create a two-page summary that compared various aspects of the Crowells' property to the five other properties, including: "sale date(s),"
*887 "appr/assess change," "2015 appr/assess amt.," "sale amt.," and "% appr/to sale." This two-page summary was also included in Exhibit I.
The Crowells argued that Exhibit I established their property was appraised at a higher ratio of its sale price than the five other comparable properties. The Crowells also noted that the five comparable properties were "all recent sales," and, unlike the Crowells' property, "none of them received an increase in assessed value based upon that sale."
Exhibit J included a four-page document created by Mr. Crowell titled "Comparison of appraised value/assessment and corresponding property tax amount of neighboring properties to [the Crowells' property]." This document compared the Crowells' property to 41 other properties. It included: "sq. ft.," "appraised value/assessment," "tax amount," and "tax amount per sq. ft." for each property. Attached to this summary were documents that "came from the assessor's website," which Mr. Crowell stated were used in creating the summary. The Crowells argued that Exhibit J showed their property was assessed at a higher rate per square foot than the 41 comparison properties.
Mr. Crowell did not dispute during the hearing that the true market value of his property was $210,660[8] and admitted that he had not obtained appraisals of the comparable properties.
Assessor testified that there were 42,000 parcels of property in Platte County. He stated that he assumed his duties as assessor on September 1, 2013, and that it was not his practice to simply carry forward a previous odd-numbered year's assessment. He stated "if there's been any change, it's looked at," and "[w]e look at what the value is two years later." Assessor testified that the decision to raise the appraised value of the Crowells' property in 2008 was not necessarily based on the sale price, as much as information obtained from a real estate listing that showed the home had been extensively renovated.
The hearing officer affirmed the BOE's decision sustaining Assessor's assessment, finding that the Crowells failed to prove their discrimination claim "because they failed to demonstrate that a statistically significant number of other residential properties within Platte County [were] being assessed at a lower ratio of market value than their property in 2015."
The Crowells filed an application for review of the Decision and Order with the Commission.[9] The Crowells raised two claims in their appeal: (1) the hearing officer erred in rejecting their argument that the 2008 assessment violated section 137.115.1 and was thus void ab initio ; and (2) the hearing officer erred in rejecting their argument that the assessed valuation of their property was the result of discrimination. They acknowledged that they "did not dispute the true market value assigned by the Assessor and affirmed by the [BOE] of the subject property." In April 2016, the Commission issued its Decision *888 and Order Affirming Hearing Officer Decision upon Application for Review.[10]
Regarding the Crowells' first point, the Commission found that the Crowells did not have standing to challenge the 2008 assessment because they did not own the property until 2014.
Regarding the second point, the Commission noted that a taxpayer must prove two elements to succeed on a discrimination claim: (1) the fair market value of the subject property on the tax day at issue; and (2) either an intentional plan of discrimination by the assessing officials resulting in an assessment of that property at a greater percentage of value than other property, generally, within the same class within the same taxing jurisdiction or that the level of an assessment is so grossly excessive as to be inconsistent with an honest exercise of judgment. The Crowells did not dispute that the fair market value of the property was $210,660, and thus the Commission found the first element "was satisfied."
The Commission next addressed "the second element of the test-whether intentional discrimination occurred or whether the level of assessment was so grossly excessive as to be inconsistent with an honest exercise of judgment." The Commission observed that "[t]he Missouri Supreme Court has held that the proper method in analyzing a claim of discrimination compares the median level of assessment for similarly-situated properties-in this appeal, residential properties located in Platte County as of January 1, 2015-to the actual level of assessment imposed on the property." The Commission found that the Crowells "did not provide substantial evidence showing that other property in the same general class, residential, was actually undervalued."
In support of this conclusion, the Commission explained that the Crowells' "documentation regarding other properties in Platte County did not establish the FMV of those properties as of January 1, 2015" and the Crowells "did not present the testimony of an expert in statistical analysis to explain their documentation or to establish that the number of properties documented was statistically significant." Consequently, the Crowells "did not produce persuasive evidence from which the median assessment level of residential properties in Platte County on January 1, 2015, could even be determined" and "[w]ithout such evidence, no comparison between the median level of assessment and the actual level of assessment of the Property could be undertaken."
The Commission concluded that there was "competent and substantial evidence to establish a sufficient foundation for the Decision of the Senior Hearing Officer," and there was "no basis to support a determination that the Senior Hearing Officer acted in an erroneous, arbitrary, capricious or unreasonable manner, or that he abused his discretion as the trier of fact and concluder of law in this appeal."
The Crowells filed a petition in the circuit court[11] alleging that Assessor "allowed an illegally imposed assessment or derivative thereof to be applied to [their] property" and that the 2008 assessment *889 increase was based on the property's sale price whereas none other of the eleven properties sold in the Crowells' neighborhood between 2008 and 2015 received an assessment increase based on the sale price. The Crowells alleged this practice constituted "disparate and discriminatory treatment," which violated the U.S. Constitution, the Missouri Constitution, and section 137.115.1. The Crowells sought "a declaration of their rights and the duties of [Assessor]." The Crowells also sought a "Writ of Mandamus compelling [Assessor] to assess all real property in the County at [the] statutorily provided percentage of its true value in money." Assessor moved to dismiss, arguing the court could not provide the relief the Crowells sought. The trial court dismissed the Crowells' petition and they appealed.
This Court reversed the trial court's dismissal, finding that although declaratory relief and mandamus were unavailable to the Crowells under sections 536.100 to 536.140, their petition had adequately stated a claim for judicial review because it alleged the Commission's decision violated constitutional provisions and was in excess of its statutory authority, two grounds for judicial review. See Crowell v. Cox , 525 S.W.3d 578, 582-85 (Mo. App. W.D. 2017). We remanded the action to the trial court "to consider the petition as a petition for judicial review of a contested case in accordance with all of the provisions of Sections 536.100 to 536.140." Id. at 585.
Upon remand, the trial court heard arguments on the Crowells' petition and issued its judgment affirming the Commission's decision and order. This appeal followed.
STANDARD OF REVIEW
This is an appeal from a contested case. Id. In such appeals, we review the decision of the Commission, not the circuit court. Daly v. P.D. George Co. , 77 S.W.3d 645, 648 (Mo. App. E.D. 2002). We will uphold a Commission decision if it was supported by competent and substantial evidence, unless the decision was arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction. Reeves v. Snider , 115 S.W.3d 375, 378 (Mo. App. S.D. 2003).
In conducting our review, we consider the evidence and its reasonable inferences in the light most favorable to the Commission's decision and defer to the Commission's findings on the credibility of witnesses and the weight of the evidence. Savage v. State Tax Comm'n of Mo. , 722 S.W.2d 72, 76 (Mo. banc 1986) ; Town & Country Racquet Club v. State Tax Comm'n of Mo. , 811 S.W.2d 403, 404 (Mo. App. E.D. 1991). If the evidence would support either of two opposed findings, this Court is bound by the Commission's determination. Savage , 722 S.W.2d at 75.
On the other hand, questions of law decided by the Commission are "matters for the independent judgment of the reviewing court." Reeves , 115 S.W.3d at 378. "Stated differently, the decision of the [Commission] on a question of law does not preclude, restrict, or control review of the issue by [this] court." Id.
This Court is loath to substitute its judgment for the expertise of the Commission in matters of property tax assessment. Zimmerman v. Mid-Am. Fin. Corp. , 481 S.W.3d 564, 571 (Mo. App. E.D. 2015). Thus, Missouri courts do not assess property for tax purposes, and the determination of proper methods of property valuation and assessment remains with the Commission. Savage , 722 S.W.2d at 75. Absent clear abuse, this Court stays its hands. Zimmerman , 481 S.W.3d at 571.
*890 DISCUSSION
The Crowells raise two points on appeal. First, they argue that the Commission erred in rejecting their argument that the 2008 assessment violated Missouri law and was thus void ab initio , "irrespective of [the Crowells'] lack of standing to challenge the assessment at the time it was imposed." Second, the Crowells argue that the Commission's decision was "contrary to law and unsupported by substantial evidence" in that violations of the law were "demonstrated, but overlooked" and that the Commission erroneously concluded that the Crowells were required to prove intentional discrimination and that all other property in the same class was undervalued.[12]
Challenge to the 2008 Assessment
The Crowells appeal the Commission's finding that they lacked standing to challenge the legality of the 2008 assessment. The Commission applied the "longstanding rule" that "individual taxpayer plaintiffs lack standing to challenge other taxpayers' property tax assessments, as they are not injured personally by others' assessment calculations." State ex rel. Kan. City Power & Light Co. v. McBeth , 322 S.W.3d 525, 530 (Mo. banc 2010). This is a correct statement of the law and the finding was supported by substantial evidence, as it was uncontroverted that the Crowells did not own the property until 2014.
The Crowells nevertheless argue that their "lack of standing to challenge [Assessor's] actions in 2008 and the question of whether [the 2008 assessment] was illegal are clearly two separate and distinct issues." The Crowells argue that "irrespective" of their lack of standing, they could challenge the 2008 assessment because that assessment "precipitated a chain of events which was directly and causally connected to the performance of the 2015 appraisal of the property, which in turn was the basis of the value as determined by the Board of Equalization for 2015." This argument fails, however, as a taxpayer lacks standing to challenge another taxpayer's assessment even if the assessment would result in a tax increase for the complaining taxpayer. See Airport Tech Partners, LLP v. State , 462 S.W.3d 740, 747 (Mo. banc 2015) (the appellant lacked standing to attack another taxpayer's assessment even if the assessment would lead to future tax increases paid by the appellant).
The Commission's determination that the Crowells' lacked standing to challenge the 2008 assessment was supported by substantial evidence and was correct as a matter of law.
The Crowells' Discrimination Claim
In their second point, the Crowells appeal the Commission's finding that they failed to prove the 2015 assessment was the product of discriminatory action of Assessor. Both the U.S. and Missouri constitutions *891 prohibit discriminatory tax treatment of similarly situated taxpayers. See U.S. Const. amend. XIV ; Mo. Const. art. X, § 3 ; see also Savage , 722 S.W.2d at 78. The taxpayer carries the burden to establish a discrimination claim. Cupples Hesse Corp. v. State Tax Comm'n of Mo. , 329 S.W.2d 696, 700 (Mo. 1959). Mere overvaluation of a specific property does not establish a discrimination claim "in the absence of a showing of an intentional plan of discrimination or a showing that there is an undervaluation in the average assessment, or that other property generally is undervalued." Id. In the absence of an intentional plan or design of discrimination, the taxpayer must prove the assessment of the taxpayer's property was "so grossly excessive as to be entirely inconsistent with an honest exercise of judgment." Id. ; see also Savage , 722 S.W.2d at 78-79.
The crux of the Crowells' discrimination claim was that other similarly situated residential properties were undervalued compared to their property.[13] "To prove discrimination by undervaluation of other property, one must show intentional systematic undervaluation by state officials of other taxable property in the same class." State ex rel. Ashby Road Partners, LLC v. State Tax Comm'n of Mo. , 297 S.W.3d 80, 85 (Mo. banc 2009). "To do this, a taxpayer first must prove the true market value of the properties at issue, including the taxpayer's own, and then show that the taxpayer's property has been assessed at a greater percentage than the other property." Id.
Specifically, the commission's methodology requires property owners to establish the true market values of their properties to show the percentage of true market values at which their properties are assessed. They then must establish the true market values of comparable properties to determine the percentages of true market values at which the comparable properties are assessed. The ratio of assessed value to true market value for each of property owners' properties is compared with the ratios of assessed value to true market value for the comparable properties to determine whether any appellant is being assessed at a higher percentage of value.
Id. ; see also Zimmerman , 481 S.W.3d at 566 (upholding the Commission's finding of discrimination because the taxpayer presented substantial evidence that the disparity between the assessor's level of assessment for the subject property and the median level of assessment for comparable properties in St. Louis County was so grossly excessive as to be inconsistent with an honest exercise of judgment).
The Commission found that the Crowells failed to present substantial evidence that the assessed valuation of their property was the product of discriminatory treatment. We agree. To prove their claim, the Crowells were required to establish the FMV of comparable properties and to determine the percentages of FMV at which the comparable properties were assessed. See Ashby , 297 S.W.3d at 85. It is undisputed that the Crowells failed to present evidence of the FMV of the comparable properties.[14] Further, even if the *892 Crowells had established the FMVs of the comparable properties, the Commission reasonably found that the Crowells failed to prove the number of properties documented-5 in Exhibit I and 41 in Exhibit J-was statistically significant and thus, could support their claim that other similar property, generally, was undervalued. See Cupples Hesse Corp. , 329 S.W.2d at 701 (a list showing the assessments of 34 residential properties in comparison to their sales value was insufficient evidence that other property in St. Louis County was generally, or on the average, undervalued).
The Crowells argue that there were other ways in which they could have proven their discrimination claim, and that the Commission erred in only focusing on a comparison of the Crowells' and other properties' assessment ratios. They argue that they could have proven their discrimination claim by showing their property was reassessed when sold based on the sales price whereas other recently sold properties were not. But even if the Crowells' property was the only property reassessed based on its sale price, that alone would not suffice.
"The equal protection clause protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. " Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va. , 488 U.S. 336, 345, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (emphasis added).[15] Thus it was not enough for the Crowells to simply show they were treated differently than other property owners. Instead, it was their burden to show the alleged disparate treatment caused them to bear an unfair share of the property tax burden compared to the other properties. See id. at 346, 109 S.Ct. 633 ("the fairness of one's allocable share of the total property tax burden can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings"); see also Cupples Hesse Corp. , 329 S.W.2d at 701 (the taxpayer did not prove its discrimination claim because the evidence "did not show a discriminatory result by reason of the methods used"). To make this showing, the Crowells needed to establish that the other recently sold properties *893 were not assessed at their FMV, which the Crowells could not accomplish without first establishing the FMVs of those other properties. The Crowells' failure to produce this evidence was fatal to their claim.
The Crowells failed to produce substantial evidence of discrimination, and the Commission's rejection of their claim was not arbitrary, capricious, unreasonable, or unlawful.
CONCLUSION
The judgment of the trial court is affirmed.
All concur.

Portions of the factual and procedural background are adopted from this Court's opinion in Crowell v. Cox , 525 S.W.3d 578 (Mo. App. W.D. 2017). All statutory citations in this opinion are to the Revised Statutes of Missouri 2000, as supplemented.

When we use the term "appraised value," we mean the value that the assessor determined to be the property's fair market value ("FMV"). The assessor is charged with determining the FMV of residential property for tax purposes. State ex rel. Ashby Road Partners, LLC v. State Tax Comm'n of Mo. , 297 S.W.3d 80, 84-85 (Mo. banc 2009). Missouri courts and statutes also refer to the FMV as the "true value in money," "true market value," "market value," and "true value." Id. at 82 n.2 ; see also Zimmerman v. Mid-Am. Fin. Corp. , 481 S.W.3d 564, 566 n.1 (Mo. App. E.D. 2015).

The assessed value is a percentage of the appraised value, and serves as the basis for calculating real estate tax liability. By statute, the assessed value of residential property in Missouri is 19% of the appraised value. See § 137.115.5(1)(a).

"The county board of equalization shall, in a summary way, determine all appeals from the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly." § 138.060.1.

As relevant to the Crowells' claim, section 137.115.1 requires the assessor to determine new assessed values as of January first of each odd-numbered year, and apply that value to the following even-numbered year "except for new construction and property improvements which shall be valued as though they had been completed as of January first the preceding odd-numbered year."

"Every owner of real property ... shall have the right to appeal from the local boards of equalization to the state tax commission ... concerning all questions and disputes involving the assessment against such property, the correct valuation to be placed on such property, the method or formula used in determining the valuation of such property, or the assignment of a discriminatory assessment to such property." § 138.430.1. "To hear and decide appeals pursuant to section 138.430, the commission shall appoint one or more hearing officers." § 138.431.1.

Other options included "overvaluation," "misgraded agricultural land," "exemption," and "misclassification."

The following exchange occurred during the hearing:
Hearing officer: What's your opinion of the true market value of that property as of January 1, 2015?
Mr. Crowell: Originally, I was under the impression that we overpaid for the property, but after seeing the appraisal report developed by [the county assessor], and realizing what other properties in the neighborhood had sold for, I think it-it's probably-we're in the ballpark at 210,660.

Any party subject to hearing officer's decision and order may file an application to have such decision reviewed by the Commission. § 138.432.

The Commission affirmed the hearing officer's decision without conducting a hearing or receiving additional evidence, as permitted by § 138.432 (the Commission may affirm the decision and order of the hearing officer on the basis of the evidence previously submitted in such case).

"Any person aggrieved by the decision of the commission may seek review as provided in chapter 536." § 138.430.1.

The Crowells' second point is multifarious. A point is multifarious if "it groups together multiple, independent claims rather than a single claim of error." Griffitts v. Old Republic Ins. Co. , 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) (finding a point multifarious because it argued the circuit court "erroneously declared and applied the law"). In Point Two, the Crowells argue that Commission's decision was "unsupported by competent and substantial evidence" and that the Commission misapplied the law; these are separate and distinct claims, which render the point multifarious. "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Id. Nevertheless, we will exercise our discretion to review the merits of the Crowells' arguments ex gratia. See Ross v. Jeschke Ag Serv., LLC , 552 S.W.3d 719, 723 n.2 (Mo. App. W.D. 2018).

The Crowells' discrimination claim was not based on overvaluation-they did not dispute that Assessor accurately determined the 2015 FMV of their property was $210,660.

The hearing officer asked Mr. Crowell whether he had obtained appraisals of any of the comparable properties:
Mr. Crowell: No.
Hearing officer: So you don't know what their actual true market value is, do you?
Mr. Crowell: No, I know what they're assessed at. It's on the summaries.
Hearing officer: And - But the assessed values could actually be incorrect?
Mr. Crowell: Well, it's my position that they are.

In Allegheny , the United States Supreme Court found an assessor's practice to value real property on the basis of its recent purchase price, and only make minimal adjustments to assessments of properties that had not recently been sold, violated the Fourteenth Amendment of the U.S. Constitution. 488 U.S. at 338, 109 S.Ct. 633. The practice resulted in "gross disparities in the assessed value of generally comparable property," and the disparities continued for more than ten years with little change. Id. at 338, 344, 109 S.Ct. 633. Contrary to the Crowells' argument, what they allege occurred here was not a "complete replication of the facts contained in Allegheny ." In Allegheny , the assessor engaged in a systematic plan to only reassess property when sold. Here, the Crowells claim they suffered discriminatory treatment because, they allege, theirs was the sole property to be reassessed based on its sales price. However, the Crowells failed to present sufficient evidence that, even if true, Assessor's conduct resulted in "gross disparities in the assessed value of generally comparable property" as was done in Allegheny . For example, in Allegheny the evidence included "a study of the assessed value of all coal tracts in Webster County from 1983 to 1984," "stipulations that the properties surrounding the property owned by Petitioner [were] comparable properties," and expert testimony that the petitioner's property was comparable to surrounding properties. See id. at 338 n.1, 340, 109 S.Ct. 633 n.3. No such evidence was presented to the Commission here.